Thank you, Justice of the Court. I'm Joe Roboto, on behalf of the Office of Justice. Mr. Chung, how are you all justifying the time you didn't realize you were going to do it? I was coerced into getting on this plot, and he actually had it written. So we had to take down this attorney. I was saying Mr. Chung should never have been involved in this lawsuit. At the time the complaint was filed, he was a 10-year resident of Seoul, Korea, along with his wife. Korea was where he was born. Korea is where his wife's family resided during that 10-year period. And as we detail in our briefs, there were any number of facts, non-contested facts, tying him to Korea and to Seoul in particular. Where the district court erred was determining, or at least deciding, that it had to be proven that Mr. Chung had expressed a deathly intent never to return to America, as opposed to whether Mr. Chung had indicated or was proven that Mr. Chung intended to reside indefinitely in Seoul, Korea. And this is not my own statement. This is demonstrated by one of the pieces of evidence both sides rely on, which is Mr. Chung's statement in 2009 when asked by a newspaper if he intended to stay in Korea. He said something to the effect that, well, Korea's a happening place, and this is where I want to be right now. Now, the plaintiffs used that statement to say, ah-ha, this is proof that he had not decided unequivocally never to return to Maryland. But it supports Mr. Chung's position because it clearly says the plaintiff remained here indefinitely, and under blue case, blue analysis, that is the answer, that is the text, and that is where the district court erred. Well, Maryland is the last place in the U.S. that you're commentating on the investment, so, you know, I mean, I guess where I get stuck on this argument for you is that it's ultimately our views who clear the error. I agree that the facts at home tell you those are actually facts, in this case, in that sense. But at the end of the day, why are we in a position to say that the district court clearly erred in this case? There were implications that your client did want to maintain ties to the United States in a particular status in Maryland. I just don't know that you can use it over and over again. Well, you're right. Again, I think the decision to be on what this intent was with regard to Korea did not want to remain here indefinitely, and clearly the evidence establishes that. And the evidence, and there is no evidence of that. How are you using the term indefinitely? I mean, yes, you're right in the sense that you can have a fixed date of return, right, but are we talking about someone who says, you know, my home is really in Maryland, I'm going to stay over here for as long as things are going good, as she does in that quote. But at some point, you know, I'm certainly going to go back home, right? I mean, that's what we're talking about. And that's why I said the district court had a number of facts that suggested he wasn't, that he was planning to leave. So, you know, I want to make sure I got this. I want to make sure I got it in place. I'm still going to vote. It's just a denial. Eventually I'm going to go back. I just don't know when, right? And I think our case is safe. You don't have to have any fixed time component. Well, there are two points to that, Your Honor. The law that you just referenced was developed as the best reflection of the Maple Island versus Beverly case, which was decided in 1952, using the insurance CJS authorities who weren't doing what's allowed to happen, or they were not. Not diversity of jurisdiction in particular. That's the first point. The second point in this circuit, in the Luke case, was made clear that the question is, does he intend to remain there indefinitely? And I submit to you that even if he had a clear intent to return to Maryland, that, hey, everybody, before it's done, I'll be back in Montgomery County, but with no date, that he has moved to Korea with an intent to stay there indefinitely. He might have a general intent to return at some point in time, but for purposes of determining his domicile or his residence for diversity of jurisdiction, under the modern blue analysis, he is considered a domicile of Korea. Counsel, do you agree with the format of the question framed by Judge Wofford's brief review that issued for clear error? Your Honor, I agree that to the extent that there were factual determinations, that would be reviewed for clear error. But here, where the facts are virtually not disputed, I think you can review it to know. Thank you. Would you take the position that the domicile issue really is the deciding reason for the whole case, and you want to have just numerous issues that have been raised by the parties, but there's a central deciding question here. Do you think that's what it is? It is the threshold issue as it relates to Mr. Chung, and I believe it relates only to Mr. Chung and not the other defendants. But there are, as we point out, at least three or four other reasons why the district court's actions should be overturned. And if it takes another default, they can at a minimum in the manner of returning them, or upon your review, allow motions for judgmental opinions if you find them to be meritorious under a de novo standard, you can be remanded with instructions from the district court to enter judgment in favor of the defendants, or at least Mr. Chung and Mr. Kim. And I don't mean by focusing on the sanction managerization to in any way suggest that the arguments related to failure of service, lack of service, are being hit strong. It really is the evidence that Mr. Chung was served. Okay. Counselor, at some point in your argument here, I would appreciate your addressing in some detail the issue of the standard for whether there should have been relief from the default judgment. Because I thought that might have been your strongest argument even stronger than jurisdiction for service. The default judgment here probably shouldn't have just stood. Well, yes, Your Honor. And if I may, can I refer to my co-counsel for Mr. Kim to address that particular point? I'll be glad to address it briefly. I just thought about that. As long as I hear somebody address it before we're done, I'm okay. Well, I think in a nutshell, the motion sets that default was filed relatively early in the lawsuit. There has been some very questionable attempts, if not outright, ineffective attempts to accomplish service on at least Mr. Chung and Mr. Kim. The parties in their application, all 55 applications, raised meritorious defenses. But to us, the capper on this is that as the service on Mr. Chung and service on Mr. Kim, it simply did not comply with the rules and statutes under which it was purported to have been done, which would have required to just record to the E.K. the default judgment. Do you think you could go ahead and refer to it for the time? 20 seconds I have left for a vote. Okay. Let's hear from your co-counsel. Your co-counsel, your colleague. May it please the Court, in the context of a civil proceeding, this case sets an extreme example of injustice. Could I ask, since your colleague expressly refers to you, do you have something more you can add on your case? With regard to the standard of review as relates to setting aside the default, I believe that to know the standard of review is required in this matter, not only in the Ninth Circuit case law, but throughout the country. All courts are unanimous. Which I don't know how often that happens. I think he was asking on the standard of review, court versus courier versus use of discretion. I think he was asking about that. Okay. All right. I think the simplest, Mr. Kim has presented many grounds to set aside the default. I think the simplest one, having spent a lot of time with the case, is that the second amended complaint superseded the complaint on which the default was entered, thereby entering the default void in the Ninth Circuit. But those two cases, I mean, they're all in place, but both of those, I mean, they're not secured, so is that right?  I would say the allegations here are of conspiracy, so that allegations relating to one defendant effectively impact all defendants. Rule 15D tells plaintiffs exactly how to supplement a complaint if they just want to add some more detail. That rule says, if you move pursuant to 15D, you supplement, you don't lose the prior complaint. The case law in the Ninth Circuit, under Rhodes, says if you're going to amend a complaint, it states that prior complaint does not exist. And in Thermal Life, we have a district court that specifically addresses this question, what happens to a default? When an amended complaint supersedes the one in which default was entered. Now, to me, that is the simplest way to address setting aside the default, but I think there are also very, and really more compelling grounds. So, then I would go for the next grounds, which are, with regard to the original complaint for Mr. Kim, he was allegedly served by a publication under Arizona law. The Arizona law is very clear that you must show due diligence as part of your process when you attempt to serve by publication. First, you have to show due diligence in attempting to serve personally. This Frank case details what you have to actually say. You can't just say, we didn't know where he lived. You have to actually detail what you hope to figure it out. That's just the general process. I think the big question, say it about how you face case that has been defaulted. And the tremendous impact of the default in the case. But, again, I think the district court found that there was a clear evidence that these parties gave a basis, not a legal basis, but a reality is, um, going into a situation where the person is capable of defending the defaults, rather than prosecuting, defending the default, as opposed to cooperating with, with being served. Um, so if you're in that situation where you don't, you, you avoid service, and you do well, fixed, you can just find a way to get them out of the case and decide the default. What I'm getting at here, but whether the prosecution did not, is that the district court in here pointed to a couple of things that indicate that these parties, rather than waiting in service, getting them out of the service, and they're trying to convince the court. And then, when the court was entered, you go back to the various proceeding and very precise to make sure that they're balanced. So, um, um, Your Honor, I would respectfully, uh, say that the record, there is not one fact to Mr. Kim evading service. He did not evade service. He, uh, lived in his house for the last four years. They personally visited his house. He never evaded service. And actually what really happened here is, the person running at me was Paul Young, who is the absent criminal, so to speak, the fraudster. He was definitely evading service. And the error here was the court took a look at each individual separately to say, okay, is this party evading service? Let me see what evidence there is. There, there is no evidence in the record whatsoever of any evasion by Mr. Kim. And he recently thought, because they came to his house, that he would be served personally. He also made some, uh, most next-gen errors. He talked to his colleagues. He was an investment banker in, in New York. We have a lot of lawyers there. And he said, hey, am I supposed to be served before I must answer? And they all said, oh, you can't be served by duplication. You will have to be personally served. And he was available always to be personally served. And they said, until that happens, you don't have to answer. Uh, that was wrong. It turns out in New Jersey, there's no duplication. You can't be, uh, served by duplication, just as in the federal rules. But that was an error in the post. It was an intentional bad faith to avoid service. So I think the critical point is there was no evasion by Mr. Kim. And all the bad acts of mad may, uh, were actually undertaken by Paul Young. It also earned a lot of humility. And because Mr. Kim isn't being sued as a corporate officer, in that comparison, he's being sued as an individual who will be personally liable. There needs to be personal service. He hasn't done anything to evade service. There's no record of it whatsoever. And in fact, there, that wasn't the case. Um, he, you know, in addition to all of what I've said here, uh, Paul Young at that time, of course, he doesn't know that the guy is a professional criminal. He told Kim, hey, I've got this. Why don't you send me some money for a retainer and I'll hire some lawyers? And so, Mr. Kim sends over $15,000. And he says, and this is all before the default is entered. So, Mr. Kim is told, yes, I will hire lawyers and we will defend this lawsuit. And Mr. Kim says, well, what's happening? What's happening? Have you hired lawyers? And then Paul Young, the guy says, oh, you know what? I had used that money. Um, you know, there was some, uh, very exigent expenses that I had to deal with. So I haven't had a chance. And he says, can you send over some more? So not only is Mr. Kim taking all the steps, sending over the money for the retainer, believing that his defense is going to be put up, but also as an individual, he's done nothing to evade service whatsoever. He's not, he truly is a victim here, which is another exceptional reason. Counsel, if you could just run through the full litany of the arguments you have as to why a default is not a good thing. Absolutely. So, so the short version is, um, there was never service of any complaint. So the publication was defective. The first random complaint was concededly mailed, which does not affect personal service. And it's also, um, not giving you, uh, personal jurisdictions. There wasn't any originally. Then the second amended complaint supersedes the earlier complaints, which completely also renders it, uh, specifically. Then the next round is, um, uh, it's also the case that, um, it should be set aside as void under, um, all the case law that says, uh, you can't at any time, without regard to waiver, bring a motion to set aside a default as void because of those grounds of, you know, lack of service in personal jurisdiction. Then the next set of grounds, uh, which is the, what I call equitable grounds, are that there is good cause to set aside the default here. That is because the default was introduced three months, the motion to set aside the default was raised just three months into the default. Uh, the amount of money is $3 million. For an individual, that is a lot of money. Um, the, uh, other round is that, um, the merits, Mr. Kim wants to stay in court. He was not connected with any fraud. He, this man will turn 70 next year and had never been sued in his life, even though he was an investment banker where suits can happen pretty frequently. He has an impeccable reputation. Integrity meant everything to him. In this case, the money is something, but the reputation, it, it's huge. So, he, he has territories. It's not all these procedural things. He has those in abundance, but he has actual defenses. Right from the get go, from the first motion to set aside the default, he has an affidavit where he says, I did not do anything wrong. And, and actually, if I may, just, um, even the reply, the back of the reply from the committee table, and again, it's kind of handy because it sets out what he said and when. So, in the first motion to set aside the default was three months into the case. Um, Mr. Kim says that, can you take that one? Okay. So, he says, uh, Mr. Kim contested the factual basis for contract of claims, contending the complaint was a massive work of smoke and mirrors, and that there were numerous facts to be determined by a finder of fact before any finding of liability could be had. He then also said the feds owe nothing to plaintiffs. Uh, so that was the very first affidavit saying on the merits, not just all these procedural things, but hey, I didn't do anything wrong here. And in fact, I, I was confident that if he's given that opportunity, I actually think even the plaintiffs would concede that he wasn't the bad guy. He was victim too, but they're looking for money. Okay. Uh, just close that answer. That's, yeah. Okay. Let's, uh, have you sit down. We'll give you a couple minutes, uh, for rebuttal, and let's hear from Joseph, the plaintiffs now. You, you've got a lot of ground to cover. So, uh, uh, yeah, please. Court, pardon you, honors. Do you have a rebuttal for opinions? Just so we're clear, pardon me for the apology, uh, would, would your honors prefer that to simply address, uh, the, the issue that Ms. Coates just did? In fact, here, I just want to say, uh, well, I was going to address the waiver issue, your honors, because it seems to uncover a little bit of, uh, uh, argument at this point. There's a waiver of, uh, uh, decision service argument, correct? Waiver, waiver of personal jurisdiction, your honor. Well, okay, yeah, I have a question about that, so why don't you start there? Okay. And, uh, your honors, uh, it's, uh, briefly mentioned just now that, you know, the, the history of the case, uh, in this manner, uh, uh, is that the case was filed in the first year of August, 2012. I don't know, okay, but I'm just going to go ahead. So, the very first filing they made, briefly, from the default, they both assert that, that the service was deficient. So, to me, I'm just, uh, going to do a lot of this argument here.  Your honors, under many, many clips, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, and, for a long time, had some concern. And so, they're not, we don't need to assert lack of personal jurisdiction in the sense that, you know, they lack minimum contact so I've seen letters on that. They're not arguing that. Well, they're just arguing that services to physicians are the focus. I know. I do. I believe that there's no personal jurisdiction based on the instance of this service. And the court in the end found out and he went ahead and had to raise and, and, and, and he apologized      how did he raise that? How can you raise that? Well, they told the court, is what I'm saying, they told the court right out of the box, look, you um, don't really have any basis for going forward with a suit against us because we were never properly served at all. Well, what was deficient about that is not what your examplies are about. Well, I mean, you're on the case law and we believe for the most part it's pretty clear that such an issue wasn't supposed to be raised and our position would be that he failed to raise it distinctly and specifically because, you know, if we're not communicating, he had said to the court, judge, we did not service properly so we're not we're not we should be before you and stand down. They made that argument so you can see that, right? The the simplicity of the deficit service insufficient process of service, Mr. Jones he already used that  so you're saying that they did properly preserve even the deficiency in the service and process so you're like, I don't know what efficiency of the service is so all I'm saying is that we have cases that say if service was deficient Obama is proud for making a default judgment so now what are they waiting to do? Could you begin with what you have in preserving the efficiency of the service?  don't  what efficiency      what efficiency is so if you can tell me what efficiency is so I don't know what efficiency is what do you mean in preserving the efficiency of the service? I think you can tell me what efficiency is so I can tell you what it is so make sure you can tell me what it    sure you can tell me what it is so what it is so    can can   what it is so make sure you can tell me what it is so make sure you can tell me what it is so make sure   tell me what it is so make sure you can tell me what it is so make sure you  tell    is so make  you can tell me
judges: Gould, Watford, Sands